IN THE UNITES STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CAROLYN HANS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE BOARD OF COUNTY COMMISSIONERS )<br>OF SHAWNEE COUNTY, KANSAS; and )<br>SHERIFF HERMAN T. JONES, in his official capacity )<br>)<br>Defendants. )<br>_____) | Case No. |

## **COMPLAINT**

COMES NOW plaintiff Carolyn Hans, by and through her attorney of record, Jennifer M. Hill, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., and for her Complaint against defendants alleges and states as follows:

## **JURISDICTION AND VENUE**

1. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. The amount in controversy exceeds $75,000.00, exclusive of costs and interest.

3. This Court has jurisdiction to hear these claims.

4. Since Shawnee County employed those sheriff deputies and jailers who violated Ms. Hans' rights, Defendant Shawnee County must indemnify its employees pursuant to state statute.

5. Venue is proper in that all of the claims herein occurred within Shawnee County, Kansas and all of the parties and witnesses known at this time are from Shawnee County, Kansas.

1

## THE PARTIES

6. Plaintiff Carolyn Hans ("Ms. Hans") is an individual residing in Saline County, Arkansas.

7. Defendant Shawnee County, Kansas is sued in the name of the Board of County Commissioners of Shawnee County, Kansas. Shawnee County is a governmental entity, which may be served with process through the County Clerk, Cyndi Beck, at 200 SE 7th Street, Room 107, Topeka, KS 66603-3971.

8. Defendant Herman T. Jones is the Sheriff of Shawnee County and can be served with process at 320 S. Kansas Ave, Ste. 200, Topeka, KS, 66603-3641.

## FACTS RELEVANT TO PLAINTIFF'S CLAIMS

9. Ms. Hans is a citizen of Shawnee County, Kansas who is profoundly deaf. She is only able to fully communicate by American Sign Language ("ASL").

10. On April 3, 2015, Ms. Hans repeatedly tried to call 911 because she was a victim of domestic violence by her intoxicated husband, Ray.

11. Ms. Hans called 911 for help. Her calls were never properly processed because Ray (the aggressor) kept talking over her to the dispatcher. Ms. Hans was forced to hang up several times and try to place the call again.

12. After several failed 911 calls, Ray talked over Ms. Hans and told the dispatcher that his wife was deaf and that she was the one who called before. Ray gave dispatch the home address.

13. Sheriff deputies were dispatched to the Hans home where the dispute occurred. The deputies separated the parties by ordering Ms. Hans to step into the front yard.

14. The deputies went inside the house and interviewed Ray. One of the officers remained in the home with Ray, while the other deputy came out and walked towards Ms. Hans and asked what happened.

15. Ms. Hans attempted to reenact the incident through gestures and generally through speaking. The officer tried to ask her a question and she did not understand. She told him "I do not understand what you are asking."

16. Video from the officers' personal cameras demonstrates that the officer who interviewed Ray spent extensive time in the home trying to ascertain what occurred. According to Ray, the parties had been married many years and they were having problems in their marriage. Ray admitted to being drunk and trying to physically stop Carolyn from leaving the home after they got in a fight. Ray also admitted to trying to let the air out of Carolyn's tires while she was trying to leave. Ray stated that Carolyn tried to push him out of the way so she could leave and when she walked by him to get in the car, she stepped on his hand. Deputy Beightel specifically asked Ray if he thought Carolyn was attempting to injure him by stepping on his hand and Ray admitted "no."

17. When the deputy told Ray he was considering arresting Carolyn based on Ray's version of events, Ray specifically stated **he did not want Carolyn to be arrested** and that **he would not be pressing charges** against her.

18. Again, Ray told Deputy Beightel that he did not believe Carolyn intentionally stepped on his hand with an intent to injure him. Ray would not allow the officers to photograph his hand.

19. Following this interview, the deputy asked Carolyn if she could leave to go stay the night somewhere. She indicated she wanted to go stay at her cousin's house. The deputies let

3

Carolyn go back into the house and retrieve an overnight bag so she could leave her marital home. She had her car keys in her hand and was preparing to leave.

20. While standing on the front porch, preparing to leave for her cousin's home, Deputy Beightel re-escalated the situation. He confronted Carolyn stating, "Do you know how close you were to going to jail tonight?" Carolyn was visibly upset by this question and asked "Me? Why?"

21. Deputy Beightel then chastised Carolyn, stating that she cannot ever "lay hands" on someone during an argument. Carolyn was confused and went back to her car to try to show the deputy, again, what happened.

22. She tried to explain she was not the aggressor and that while she was trying to leave Ray had thrown something at her. Deputy Beightel, clearly frustrated, asked what it was Ray threw at her. After searching the ground in front of her car, Carolyn found a dog treat and said "he threw this at my eye."

23. Deputy Beightel charged back into the home and said "Did you throw something at her?" Ray denied the action responding, "No. No sir."

24. After several additional questions and comments, the following exchange occurred between the parties:

Deputy: Alright, she's going to jail.

Mr. Hans: What?

Deputy: She's going to jail. She told us you threw something, hit her in the eye. What she did after she was explained that she may go to jail, was a different description than what she said the first time. So she's going to jail. Um, she won't be able to call you tonight, so you guys will be separated for the night. Do you have any questions for me?

25.     The deputies came out and told Carolyn that if she cooperates they will cuff her in front instead of in back. At no time did either deputy explain to Carolyn why they were arresting her, what law she was believed to have broken, or why there was probable cause to arrest her.

26.     No sign language interpreter was brought to the scene. Ms. Hans was not shown or read her Miranda rights.

27.     Ms. Hans was transported, processed, and booked into Shawnee County jail.

28.     During intake a jailer asked Ms. Hans whether she was suicidal by pointing to a computer screen with the question. She communicated "no" by shaking her head.

29.     The jail intake questionnaire answers given by Ms. Hans only showed one area of concern in that it asked Carolyn if she felt like there was nothing to look forward to. She responded "yes."  Based on that answer alone, the County alleges it was well within its rights to place Carolyn in the jail's psych ward.

30.     Despite denying any suicidal ideations, Ms. Hans was placed in solitary confinement in the jail's psych ward and issued a suicide garment. The garment was too small and she was naked underneath. She had to request a blanket through gestures to cover herself.

31.     She tried to ask for a toilet and was motioned by deputies to urinate in a grate on the floor, in full view of the county's jail workers. She tried to ask for toilet paper and was provided three squares of paper.

32.     Ms. Hans was never provided a sign language interpreter (despite requesting one), was never provided a TTY or access to a videophone (VP) to attempt to contact family or a lawyer, was not issued appropriate clothing, and had no information about her arrest or detention.

33.     Ms. Hans' abuser, Ray Hans, posted bond for her late in the day on April 4. During processing a jailer told Ms. Hans, by a written note, that she had to be supervised by a court services

5

officer, Mary Herman. Ms. Hans specifically asked for a sign language interpreter so she could meet with her CSO. She was denied this request and told if she did not report back (even though she would have no interpreter), she would be re-arrested.

34. On April 6, Ms. Hans attempted to meet with her CSO despite the lack of accommodation for her disability. After review, the district attorney declined to bring any charges against Ms. Hans.

35. Since this incident, Ms. Hans filed for and successfully obtained a divorce from Ray Hans. Ray continues to harass, abuse, and intimidate Ms. Hans.

36. On September 24, 2015, Ray harassed Ms. Hans and sprayed her with a power washer in a fit of rage. Ms. Hans immediately got in her car and left.

37. Ms. Hans' divorce attorney instructed her to file a police report about the incident so the records could be introduced in the family law court.

38. On September 25, 2015, Carolyn attempted to file a police report on Ray for the power washer incident. Carolyn called the Sheriff's Department to file a report, using a Video Relay Service, so that she could use a sign language interpreter to explain the abuse and file the report.

39. Shawnee County staff advised Ms. Hans that the Sheriff's Department would not accept a complaint or file a report over the phone, even after Ms. Hans explained that she needed accommodation due to her disability.

40. Ms. Hans was transferred to the supervising officer, Deputy Blosser. Deputy Blosser, of the Shawnee County Sheriff's Department, again told Carolyn he could not speak to her using the Video Relay Service and that she needed to hire an interpreter to communicate with

him. He told her they did not have a sign language interpreter and refused to file a report regarding Ray and the power washer incident.

### COUNT 1: AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

41. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

42. Ms. Hans is profoundly deaf.

43. As a disabled person, Ms. Hans is lawfully allowed access to the full services, programs, activities, or benefits of a public entity, in this case, Shawnee County.

44. On April 3, 2015, Ms. Hans sought police or sheriff assistance by calling 911. Despite deaf citizens needing accommodation when requesting 911 or emergency assistance, the county emergency dispatcher failed completely to communicate in any form with Ms. Hans

45. Ms. Hans was repeatedly and disturbingly denied full access to the County's services strictly because of her status as a disabled person.

46. As a direct and proximate result of this violation of federal law, Ms. Hans suffered damages due to the County's failure to accommodate her disability.

47. Defendants' discriminatory and illegal actions against Ms. Hans were in violation of Kansas law, the Americans with Disabilities Act, and the Kansas Act Against Discrimination.

### COUNT 2: AMERICANS WITH DISABILITIES ACT - WRONGFUL ARREST

48. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

49. As a disabled person, Ms. Hans is lawfully allowed access to the full services, programs, activities, or benefits of a public entity, in this case, Shawnee County.

50. All employees and representatives of the defendants were aware of Ms. Hans' disability, as they attempted but failed to communicate with her with gestures and "mouthing" of words. Defendants failed to adopt and enforce ADA-compliant policies for 911 calls, deputy investigations, or arrests.

51. On April 3, 2015, Ms. Hans was arrested because the deputies present at the scene were annoyed or frustrated with their inability to communicate fully with her. The deputies failed to conduct a reasonable investigation, failed to evaluate the situation appropriately, and ultimately arrested Ms. Hans because she "changed her story." In this case, they arrested the victim rather than the perpetrator.

52. Ms. Hans was not charged with breaking any law. She was arrested because the officer in charge of the scene was frustrated by his communication with a deaf person.

53. Ms. Hans was denied full access to the County's services, strictly because of her status as a disabled person, in violation of the Americans with Disabilities Act.

54. As a direct and proximate result of this violation of federal law, Ms. Hans suffered damages due to her wrongful arrest.

### COUNT 3: AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

55. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

56. As a disabled person, Ms. Hans is lawfully allowed access to the full services, programs, activities, or benefits of a public entity, in this case, Shawnee County.

57. On April 3, 2015, after being wrongfully arrested, Ms. Hans was then further discriminated against by Shawnee County and its employees based on her disability.

58.     Ms. Hans was forced to wear a suicide garment because she had been assigned to the suicide cell in the jail. The garment did not fit Ms. Hans and because of its design, Ms. Hans was physically naked and exposed to the jailers. The jail employees, aware of the situation, did nothing to rectify the inequity and humiliation.

59.     Ms. Hans had to ask for a blanket to cover herself, basically by miming and using her hands and gestures to show the problem.

60.     While in jail, Ms. Hans was not provided adequate toileting.

61.     Ms. Hans was wholly denied access to a sign language interpreter.

62.     Ms. Hans was denied access to a TTY phone or a video phone so that she could call family or friends to help her with her wrongful arrest and detainment.

63.     Ms. Hans was never told why she was in jail. She was never explained the basis for her detainment and was never read her Miranda rights.

64.     After being bonded out by Ray Hans, her aggressor, Ms. Hans was advised she had to report to her CSO by April 6, 2015. After specifically asking for a sign language interpreter at this meeting, Ms. Hans was denied this request and advised that if she no-showed to her meeting with her CSO, she would be re-arrested. No interpreter was provided for her at the meeting with her CSO.

65.     In September 2015, Ms. Hans attempted to file a report to the Sheriff's Department over the phone regarding further criminal and abusive behavior by Ray Hans. Ms. Hans was again denied access to the benefits of the County's services, like any non-disabled citizen. Ms. Hans was advised that regardless of the circumstances, no police report would be accepted over the phone. This Shawnee County policy of no phone police reports clearly did not work under the circumstances, and simple, reasonable accommodation could have provided Ms. Hans the service

that she needed. Despite this fact, Ms. Hans was denied the access to a law enforcement officer and his services solely because of her disability

66.     Ms. Hans was repeatedly and disturbingly denied full access to the County's services strictly because of her status as a disabled person.

67.     As a direct and proximate result of this violation of federal law, Ms. Hans suffered damages due to the County's failure to accommodate her disability.

68.     Defendants' discriminatory and illegal actions against Ms. Hans were in violation of Kansas law, the Americans with Disabilities Act, and the Kansas Act Against Discrimination.

## COUNT 4: WRONGFUL ARREST § 1983

69.     Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

70.     At the time of Plaintiff's arrest on April 3, 2015, the deputies who arrested Plaintiff had no probable cause to believe that Plaintiff had committed any offense.

71.     Any reasonable police officer or sheriff's deputy would have evaluated the scene and determined that there was not any probably cause to find that Plaintiff had committed an offense.

72.     The District Attorney pursued no criminal action against the Plaintiff.

73.     Plaintiff was arrested and jailed despite no evidence of committing a crime.

74.     Plaintiff has a constitutional right to be free of wrongful arrest. Plaintiff suffered damages as it results from the wrongful arrest. Defendants are liable for wrongful arrest pursuant to Section 1983.

## COUNT 5: NEGLIGENT TRAINING/ FAILURE TO TRAIN

75. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

76. Defendant Shawnee County and Defendant Jones both knew or should have known that County employees would encounter deaf citizens during their work with the public.

77. Defendant Shawnee County and Defendant Jones are responsible for ensuring their employees are ADA compliant and protect the rights of the citizens of Shawnee County.

78. Defendant Shawnee County and Defendant Jones failed to provide any appropriate training for their officers and employees on how to interact with and communicate with deaf citizens.

79. Defendant Shawnee County and Defendant Jones knew or should have known that additional training is necessary and required on how to communicate effectively with deaf citizens by 911 dispatchers when a deaf citizen needs emergency assistance.

80. Defendant Shawnee County and Defendant Jones knew or should have known that additional training is necessary and required on how to communicate effectively with deaf citizens during instances of conflict by sheriff deputies.

81. Defendant Shawnee County and Defendant Jones knew or should have known that additional training is necessary and required on how to communicate effectively with deaf citizens during their intake process into jail.

82. Defendant Shawnee County and Defendant Jones knew or should have known that additional training is necessary and required on how to communicate effectively with deaf citizens during attempts to file a police report.

83. Additional and better training would have prevented many of the harms inflicted upon Ms. Hans in these situations. Additional and better training was not provided and the Defendants are liable for these failures under Kansas law.

## COUNT 6: NEGLIGENT SUPERVISION

84. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

85. Defendant Shawnee County and Defendant Jones both knew or should have known that County employees would encounter deaf citizens during their work with the public.

86. Defendant Shawnee County and Defendant Jones are responsible for ensuring their employees are ADA compliant and protect the rights of the citizens of Shawnee County.

87. The Defendants are responsible for supervising their employees to ensure they are compliant with all state and federal laws and regulations.

88. The Defendants failed to supervise their employees to ensure compliance with state and federal law. The Defendants' collective failures created an environment where systemic failures in working with deaf citizens could occur.

## COUNT 7: FALSE ARREST

89. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

90. On April 3, 2015, Ms. Hans was restrained of her personal freedom by deputies and employees of the defendants. She was then sent to jail.

91. Video evidence demonstrates that Ms. Hans committed no crimes and during her interaction with Shawnee County deputies, she made no acts, threats, or gestures of personal violence.

92. Video and audio evidence demonstrates that Ms. Hans was arrested because the deputy at the scene was frustrated that Ms. Hans allegedly "changed her story."

93. Kansas law states "false arrest" is the restraint of the personal freedom of an individual without legal excuse by any words, acts, threats, or personal violence that under the circumstances the one being restrained fears to disregard. *Soto v. City of Bonner Springs,* 38 Kan. App. 2d 382, 385, 166 P.3d 1056, 1059 (2007) *aff'd,* 291 Kan. 73, 238 P.3d 278 (2010).

94. All defendants are liable for the false arrest of Carolyn Hans on April 3, 2015.

## COUNT 8: NEGLIGENCE

95. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

96. The defendants owed Ms. Hans a duty of care to provide her with access to appropriate emergency and policing services even though Ms. Hans is deaf.

97. The defendants breached the duty to provide Ms. Hans with appropriate emergency and police services, a breach which stemmed directly from their failure to appropriately interact with deaf citizens.

98. The breach of these duties by the defendants caused injury to Ms. Hans.

99. Ms. Hans has extensive damages from the deprivation of her access to adequate police services.

## COUNT 9: TORT OF OUTRAGE

100. Plaintiff incorporates by reference all other allegations set forth in the paragraphs above.

101. The employees of Defendant Shawnee County interacted with Ms. Hans on multiple occasions and had multiple opportunities to treat Ms. Hans appropriately despite her

deafness. As previously set forth, the Defendants' employees acted with reckless disregard of Ms. Hans' rights and personal dignity.

102. The interactions of Ms. Hans with defendants' employees were extreme and outrageous. Placing someone under arrest because a deputy is frustrated is a blatant abuse of power and disturbing in modern society. Placing someone in a suicide ward (stripping them of their clothes, their privacy, and any dignity) when they are not a danger to themselves is outrageous.

103. The actions of placing someone under arrest and thereafter mistreating them directly caused Ms. Hans extreme emotional distress.

104. Following her wrongful arrest, Ms. Hans was severely emotionally distressed and terrorized for many months.

WHEREFORE, plaintiff, Carolyn Hans, prays that the Court enter judgment in her favor and against Defendants; that the Court award her all damages to which she is entitled including, but not limited to, damages for emotional distress and mental anguish, and compensatory damages; that the Court award Plaintiff reasonable attorney fees and the costs of this action; and that the Court allow such other and further relief as it deems just and equitable.

Respectfully submitted,

/s/Jennifer M. Hill
Jennifer M. Hill, #21213
*Attorney for Plaintiff Carolyn Hans*
MCDONALD, TINKER, SKAER,
  QUINN & HERRINGTON, P.A.
300 W. Douglas, Ste. 500
Wichita, KS 67202-2909
Telephone:  316.263.5851
Fax:  316.263.4677
jhill@mcdonaldtinker.com

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury in this case.

/s/Jennifer M. Hill
Jennifer M. Hill, #21213

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Topeka, Kansas, as the place of trial in this case.

/s/Jennifer M. Hill
Jennifer M. Hill, #21213